IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES D. SPEARS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-181-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Charles D. Spears requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2]Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 4, 1972, and was thirty-eight years old at the time of the administrative hearing. (Tr. 28, 130). He graduated high school and completed two years of college, and has worked as a dispatcher, police officer I, forklift operator, construction worker I, deputy sheriff, and assistant police chief. (Tr. 56, 160). The claimant alleges that he has been unable to work since December 28, 2008, due to depression, a mood disorder, sleep apnea, carpal tunnel syndrome in both wrists, tendonitis, neck and back injuries, and right knee pain. (Tr. 159).

## Procedural History

On April 13, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 4, 2011. (Tr. 13-20). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of light

-3-

work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday. (Tr. 16). The ALJ then concluded that the claimant could return to his past relevant work as a dispatcher and assistant police chief. (Tr. 20).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly assess his RFC, (ii) by failing to properly consider his disability rating from the Veteran's Administration (VA), and (iii) by failing to conduct a proper step four analysis. With regard to the first contention, the claimant specifically contends that the ALJ's RFC assessment failed to reflect limitations related to several of his severe impairments. The Court finds the first and second contentions persuasive.

The record reveals that the claimant had the severe impairments of cervical disc disease, lumbar disc disease, migraines, and sleep apnea. (Tr. 15). Additionally, the ALJ found that the claimant had the non-severe impairments of carpal tunnel syndrome, chronic right knee pain, black out spells, tendonitis in both arms, depression, mood disorder, and obesity. (Tr. 15-16). In December 2005, the claimant blacked out and wrecked his vehicle while driving with family members, and also suffered neck pain, arm pain, and back pain with radiated leg pain following the accident. (Tr. 515, 520). He has since experienced four other episodes of blacking out due to laughing or blood loss. (Tr. 238, 319, 518). Doctors have been unable to identify the cause of these experiences, and cardiology evaluations have come back normal. (Tr. 372-383, 416-417, 517). In 2006, the claimant was prescribed a CPAP machine for his sleep apnea. (Tr. 474). Following a

-4-

motorcycle accident in 2008, the claimant was prescribed a walking boot for pain in his right foot. (Tr. 323-324). The claimant regularly reported suffering from migraines and has even been to the ER for treatment for them, but a March 2009 MRI was "completely normal." (Tr. 307, 367, 525). An MRI of the claimant's cervical spine revealed mild degenerative joint disease with a very mild disc bulge at L5-S1 that a Physician's Assistant at the VA informed the claimant would subside in two months with nonsteroidal anti-inflammatory medications. (Tr. 307, 368-370). The VA prescribed a cane to the claimant, which he received in March 2009. (Tr. 413-414). On July 8, 2010, the claimant injured his left shoulder when working excessively to put on a new roof. (Tr. 467). The claimant presented to the VA on January 28, 2011, with complaints of hand numbness and pain; the VA reevaluated his carpal tunnel and provided a surgical consult. (Tr. 480-481). That same month, he also presented to the VA with further complaints of low back pain and bilateral foot pain. He was informed that his pain was not musculoskeletal, but probably neuropathic. (Tr. 486). Additionally, the claimant regularly attended supportive psychotherapy mental health treatment, and was generally assessed a Global Assessment of Functioning Score ("GAF") between 55 and 60. (Tr. 241-243, 245-248, 253-256, 259-260, 264-267, 272-276, 289-296).

    Records from the VA indicate that the claimant has 100% service-connected disability as of February 15, 2011, an increase from 70% service disconnected disability as of 2009. (Tr. 411-412, 526-530). These ratings include: 10% rating for degenerative arthritis of the spine, 10% for paralysis of median nerve (left hand carpal tunnel syndrome), 50% for sleep apnea syndromes, 10% for lumbosacral or cervical strain,

paralysis of median nerve (right hand carpal tunnel syndrome), and 10% for tinnitus. (Tr. 411-412, 528). The 100% rating is based on a "combined rating table that considers the effect from the most serious to the least serious conditions." (Tr. 527).

At the administrative hearing, the claimant testified that he was 90% service-connected disabled and 100% unemployable. (Tr. 29). He testified that he suffered from depression, mood disorder, sleep apnea, carpal tunnel bilaterally, tendonitis in both arms, neck and back injuries, problems with his right knee, blackout episodes, and migraines. (Tr. 30-31). He stated that he uses a CPAP machine for his sleep apnea, but that he still has episodes of daytime sleepiness. (Tr. 33-34, 43-44). He stated that he had experienced blackout episodes a total of five times, four when he was laughing and once when he had cut his finger, but that no one had been able to determine the cause. (Tr. 35-36). He testified that he has suffered migraines since 2003 and that he takes medications that help with the frequency to some extent. (Tr. 36-38). Additionally, he testified that he injured his neck and lower back in the 2005 motor vehicle accident which caused a constant burning sensation on his lower back, and that a lot of walking or standing will exacerbate the pain. (Tr. 38-39). Due to his back injuries, he was discharged from the military because he could no longer pass the physical fitness tests. (Tr. 49-50). He stated that his carpal tunnel had recently been reevaluated, and that he was going to get a second opinion about surgery for the pain (which was in both hands, but more so in the right hand). (Tr. 41). He testified that he has trouble manipulating objects like a pencil, and that he has to use two hands to carry a gallon of milk. (Tr. 41-43). As to his living arrangements, the claimant testified that he was living with his parents because his house

had been damaged by renters and was undergoing renovations, and that he was able to handle his personal hygiene. (Tr. 45). He stated that he attended American Legion Post twice a month, and occasionally hunts and fishes although he is not motivated like he used to be, and has custody of his two children every other weekend. (Tr. 46-47).

In his written opinion, the ALJ summarized the claimant's testimony, a Third party function report completed by the claimant's father, and the medical record. As to the claimant's VA disability rating, the ALJ noted that the claimant began receiving benefits in 2009, then stated, "In accordance with 20 C.F.R. § 404.1504, decisions made by any nongovernmental agency or by any other governmental agency about whether a person is disabled is based on its rules and is not the decision of the Social Security Administration about whether a person is disabled. SSA must make a disability determination based on Social Security law. Therefore, a determination made by another agency (such as [the VA]) that a person is disabled is not binding on the Social Security Administration." (Tr. 19). The ALJ then discredited the claimant's testimony and found him not disabled.

Although the ALJ found the claimant had several severe impairments, *i. e.*, cervical disc disease, lumbar disc disease, migraines, and sleep apnea, he failed to include specific limitations with regard to any of these impairments. (Tr. 16-20). In fact, the ALJ devoted a great deal of time at step four to discrediting the claimant's complaints of back pain, and merely referred to the claimant's diagnosis of migraines and sleep apnea without explaining how either of these severe impairments would affect his ability to work. An explanation should be provided when, as here, an impairment found to be

severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's severe impairments did not call for corresponding physical limitations related to his back, lower extremity, migraines, and daytime sleepiness problems in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and

-8-

chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

The ALJ's treatment of the claimant's disability rating was likewise deficient. First, the ALJ simply stated that the finding of disability went to an issue reserved to the Commissioner but did not explain why it was not persuasive. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480.

Because the ALJ failed to explain how the claimant's severe impairments of cervical disc disease, lumbar disc disease, migraines, and sleep apnea at step two became

so insignificant as to require no limitations in his RFC at step four, and further failed to properly consider the VA's disability rating, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis.  If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma